FRANK X. GRAVES and SARAH GRAVES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Graves v. Commissioner
Docket No. 4849-73
United States Tax Court
T.C. Memo 1975-44; 1975 Tax Ct. Memo LEXIS 328; 34 T.C.M. (CCH) 287; T.C.M. (RIA) 750044; March 3, 1975, Filed *328 Frank X. Graves, pro se. Timothy L. Nelson, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent has determined a deficiency of $33,554.45 in petitioners' 1968 Federal income taxes. The sole issue presented is whether an amount specifically allocated by a contract for the sale of all the assets of a business to a restrictive covenant must be reported as capital gair or ordinary income. All of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, are found accordingly. Petitioners, Frank X. and Sarah Graves, are husband and wife who, during the calendar year 1968 and at the time the petition was filed, resided in Paterson, New Jersey. Petitioners filed their joint Federal income tax return for the taxable year 1968 with the district director of internal revenue at Newark, New Jersey. Since 1924 Frank X. Graves (hereinafter petitioner) has been employed by the Paterson Evening News as a police reporter. Petitioner also operated a cigarette vending machine business under the name of Excelsior Sales Co., from 1931 until May 20, 1968. In 1967 petitioner commenced negotiations with representatives *329 of Silco Automatic Vending Inc., (hereinafter Silco) whereby Silco sought to acquire the business of petitioner by purchase. A contract of sale was executed by petitioner and Silco on May 20, 1968. The relevant provisions of the contract of sale include the following: 1. Sale of Assets. The Seller agrees to bargain, sell, assign, transfer and deliver to the Buyer for the consideration hereinafter provided, as of the close of business on May 31, 1968, all of the assets of the Seller described on Schedules A and B annexed to this agreement, the right to use the name "Excelsior Sales Co.", the accounts receivable by the Seller from location proprietors listed on Schedule A annexed to this agreement, all licenses of the Seller related to the business of Excelsior Sales Co. (to the extent transferable), and the Seller's books and records relating to active locations, at a closing to be held as specified in paragraph 4 below. The sale of said assets shall be made free and clear of all liabilities, obligations, security interests, liens and encumbrances. Subject to the terms of this agreement, and in reliance upon the representations, warranties and covenants of the Seller *330 contained herein, the Buyer does hereby agree to purchase said assets at said closing; and, in full consideration therefor, and in consideration for the restrictive covenants contained in paragraph 11 of this agreement, agrees to pay (subject to the post-closing adjustments provided for in paragraph 2 below) the total sum of SIX HUNDRED and FIVE THOUSAND ($605,000.00) DOLLARS computed as follows: (a) For the cigarette
vending machines, parts,
equipment and motor vehicles
$140,000
(b) For the leases with location
proprietors
$ 70,000
(c) For the accounts receivable
by the Seller from location
proprietors
$ 30,000
(d) For the Seller's inventory
of cigarettes, matches,
and revenue stamps
$130,000
(e) For the restrictive
covenant contained in
paragraph 11 hereof
$ 75,000
(f) For the name "Excelsior
Sales Co."
$ 20,000
(g) For the Seller's goodwill,
including all of the
Seller's books and records
relating to active accounts,
all licenses (to the extent
transferable), and the
Seller's telephone numbers
$140,000
TOTAL
$605,000
11. Restrictive Covenant. The Seller acknowledges that this transaction would be of little value to the *331 Buyer if the Seller was permitted, within a reasonable time after the date hereof, to compete with the Buyer for the Seller's present customers, or to compete in the same geographical areas in which the Seller presently operates his business. Therefore, in order to protect the investment by the Buyer in the assets to be sold and transferred pursuant to this agreement, and in consideration for the sum of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS referred to in paragraph 1(e) above, the Seller does hereby execute and deliver unto the Buyer the following restrictive covenant. The Seller agrees that for a period of five (5) years from and after the date hereof, he will not, in the geographical area hereinafter mentioned, directly or indirectly, in any individual or representative capacity whatever, engage in the business of; or, as owner, stockholder, partner, sole proprietor, joint venturer, or otherwise, manage, operate, control, assist, participate, be connected with or render any consultation or business advice with regard to any business engaged in the operation, installation, distribution to location proprietors, management, leasing or control of cigarette or cigar vending machines *332 or the sale or vending of cigarettes or cigars by means of coin operated vending machines. The geographical area to which the preceding covenant refers are the counties in New Jersey known as Morris, Essex, Passaic and Bergen. It is intended that the foregoing restriction shall be severable and shall apply separately and distinctly to each of said counties, and within said counties, to each of the municipalities therein, with the same force and effect as though the said covenants were separately expressed with respect to each such county, and each such municipality. The Seller declares that the foregoing territorial and time limitations are reasonable, and are properly required for the adequate protection of the business hereby to be acquired by the Buyer, and that in the event that any such territorial or time limitation is deemed to be unreasonable by a court of competent jurisdiction, the Seller agrees and submits to the reduction of either said territorial or time limitation, or both, to such an area or a period of time as to said court shall be deemed reasonable. The Seller further declares that the foregoing restrictive covenants, limited in time and territory as aforesaid, *333 are ancillary to the within sale of assets and necessary to protect the Buyer in the enjoyment of and beneficial use and ownership of the business hereby acquired. In the event the Seller should be in violation of the restrictive covenant hereinabove set forth, then the time limitation thereof shall be extended for a period of time equal to the period of time during which such breach or breaches should occur; and in the event the Buyer should be required to seek relief from such breach in any court, the restrictive covenant shall be extended for a period of time equal to the pendency of the proceedings before such court, including all appeals. The Seller does hereby acknowledge that money damages alone would not adequately compensate the Buyer in the event of breach by the Seller of the foregoing restrictive covenant, and therefore, the Seller does hereby covenant and agree that, in addition to all other remedies available to the Buyer at law or in equity, the Buyer shall be entitled to injunctive relief for the enforcement thereof. The existence of any claim or cause of action by the Seller against the Buyer, whether predicated upon this agreement or otherwise, shall not constitute *334 a defense to the enforcement by the Buyer of the foregoing restrictive covenant, but shall be litigated separately. The contract of sale also provided that the sales proceeds would be escrowed and the proceeds made available to petitioner only after taking account of certain post-closing adjustments and the satisfaction of any liabilities petitioner remained obligated to pay under the contract of sale. The escrow argeement provided for in the contract of sale was executed by petitioner on May 31, 1968, the date of the closing. On May 31, 1968 petitioner entered into an exclusive five-year employment agreement with Silco. The exclusive employment agreement was a separate agreement which was not incorporated in the contract of sale. In addition to contracting for the petitioner's services over a five-year period, the agreement provided: The Employee hereby promises and covenants that he will not advise, assist or consult with, or be employed by any other vending machine company for the term of the within Agreement and for a period of two years next after the termination thereof, nor furnish any information of whatever nature to any persons, firms, or corporations, regarding the *335 Employer's business matters, customers, accounts and relationships during said seven year period. Silco has consistently treated the allocations in the contract as stated and has amortized that portion of the purchase price ($75,000) attributed to the "restrictive covenant." Silco has treated the $140,000 of paragraph 1(g) of the contract of sale as payment for goodwill. No evidence has been presented which indicates the agreement of May 20, 1968 was alterable or unenforceable because of mistake, undue influence, fraud, or duress. The sole issue is whether an amount specifically allocated to a covenant not to compete in a contract for the sale of a business must be reported as ordinary income or as capital gain. Petitioner contends that in form and substance the covenant was not severable from the sale of goodwill and, therefore, amounts received in exchange for the covenant were properly reported as capital gain. Respondent, on the other hand, takes the opposite view and also alleges that, in the instant case, which is reviewable by the Third Circuit, the specific allocations in the contract of sale to the covenant are binding upon the parties to the contract in the absence *336 of fraud, duress, mistake, undue influence or the like under (C.A. 3, 1967), certiorari denied . We agree with respondent. Under the rule generally followed, in order to have legal significance for Federal income tax purposes, a contractual allocation of a portion of the purchase price of a covenant not to compete must reflect the substance of the agreement entered into by the parties. As stated in (C.A. 9, 1961), affirming : [The] covenant must have some independent basis in fact or some arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement. Although in determining the substance of the transaction we do not confine ourselves to the formal written documents, they are not treated lightly but accorded great weight. In this regard , (C.A. 2, 1959), affirming , stated: [When] the parties to a transaction *337 such as this one have specifically set out the covenants in the contract and have there given them an assigned value, strong proof must be adduced by them in order to overcome that declaration. * * * Additionally, in Danielson, () the Third Circuit articulated a rule permitting a party to "challenge the tax consequences of his agreement * * * only by adducing proof * * * of mistake, undue influence, fraud, duress, etc." Since appeal in this case lies in the Third Circuit, we follow the Danielson rule. , affd. (C.A. 10, 1971), certiorari denied . Petitioner has failed to sustain his burden of proof under either the Danielson rule or the strong proof rule. Petitioner conceded in his reply brief that "[no] evidence has been presented which indicates that the agreement of May 20, 1968 was forced upon petitioner by mistake, undue influence, fraud or duress." Under the Danielson rule, respondent's determination must therefore be sustained. Additionally, even aside from the Danielson rule, petitioner has adduced no proof indicating *338 that the agreement lacks an independent basis in fact or some arguable relation with business reality. In fact, petitioner had operated the business sold from 1931 to 1968. The personal services he provided and the customer relations he cultivated over nearly four decades were undoubtedly important ingredients in the success of the business. Under these circumstances, the purchasers had good reason to fear competition from petitioner and negotiate for a covenant not to compete. Indeed, the agreement which petitioner signed states that the "Seller declares that the * * * [restrictive covenants] are reasonable, and are properly required for the adequate protection of the business hereby to be acquired by the Buyer * * *." Moreover, the scope and specificity of the restrictive covenants, as well as the remedies provided for breach of the covenants, indicate that the parties considered them important. Petitioner agreed not to directly or indirectly compete in the geographical area served by the business for a period of five years in any capacity or through any business form. He agreed that money damages would not adequately compensate for a breach and that the buyer would be entitled *339 to injunctive relief. He also agreed that the time limitations of the restrictive covenant would be extended by the amount of time he was in breach or the time consumed by litigation relating to a breach. Finally, he agreed that any claims he might have against the buyer would not constitute a defense to enforcement of the restrictive covenant, but would be litigated separately from any controversies over the restrictive covenant. Petitioner nevertheless advances several arguments to support his contention that in form and substance the covenant was not severable from good will. He contends that the language in the contract describing the covenant as ancillary to the sale of the business and necessary to protect the buyer's beneficial use of the business acquired requires the conclusion that the covenant was not severable from good will. Petitioner's theory fails to account for the scope and specificity of the covenants, the reasonableness of the covenants under the circumstances, and the separate allocations to the covenant and good will specifically made in the contract of sale. These factors lead us to believe that the covenant was separately discussed and the term "ancillary" *340 was used to indicate the importance of the covenants as a part of the contract enabling the buyer to achieve its objectives in acquiring the business. Petitioner further contends that the business was sold for a lump sum of $605,000 and that in reality no specific allocation of a part of the purchase price to the covenant was ever made. Petitioner relies on language in the escrow agreement referring to the lump sum purchase price of $605,000. Petitioner's reliance is misplaced because the escrow agreement was merely a mechanism for facilitating the transfer of the business pursuant to the terms of the contract of sale in which the purchase price was specifically allocated among the various assets. The escrow agreement was not the governing instrument and reference therein to a lump sum does not overcome the specific allocations in the contract of sale. Finally, petitioner characterizes the covenant as a penalty for interference in the buyer's beneficial use of all of the assets purchased. He alleges that the five-year employment contract he negotiated with the buyer subsequent to entering into the sales contract placed restrictions on his right to work for other vending companies, *341 making the covenant not to compete superfluous except for providing a penalty for interference in the business sold. Petitioner's description of the restrictive covenant does not alter its substantive provisions or the tax consequences that ensue therefrom. In view of the various rights and remedies carefully articulated in the restrictive covenant, petitioner's description is inadequate. Additionally, there is no reference in the sales contract to the employment contract subsequently entered into. While the restrictions in the subsequent employment contract overlap the provisions of the restrictive covenants, the latter are generally much broader and more specific. Petitioner's experience in running the business sold for nearly four decades would undoubtedly be valuable to the buyer, and petitioner received compensation under the employment contract in addition to and separate from the $605,000 paid for the business. The subsequent employment contract therefore has no bearing on the portion of the $605,000 purchase price specifically allocated to the covenant not to compete in the contract of sale. The petitioner has not produced any evidence of fraud, duress, mistake, undue influence *342 or the like. Furthermore, the record does not satisfy the requirements of the strong proof rule. Petitioner is, therefore, bound by the terms of the agreement and the $75,000 allocated to the restrictive covenant must be reported as ordinary income. Decision will be entered for the respondent.